STATE of Missouri, Respondent,

v.

Larry D. SIMMS, Appellant.

No. WD 32741.

Missouri Court of Appeals,
Western District.

Nov. 9, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Nov. 30, 1982.

Application to Transfer Denied
Jan. 17, 1983.

James W. Fletcher, Public Defender, Kansas City, Sean D. O'Brien, Asst. Public Defender, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Larry Simms appeals from a jury conviction for robbery in the first degree. Pursuant to the verdict, the court sentenced him to 15 years imprisonment. Simms contends the court erred in sustaining an objection to a voir dire question, in sustaining an objection to a portion of his final argument, and in allowing the State to call a rebuttal witness. Affirmed.

At 2:19 a.m. on September 1, 1980 a Kansas City police officer conducted a pedestrian check on three men at the corner of Independence and Brighton in Kansas City. One of the men was wearing a white T-shirt, orange sweat pants, and tennis shoes. This man identified himself to the officer as Larry Simms. The officer lightly frisked Simms, but found no weapon. The officer left Simms and the other two men on the corner.

At about 3:33 a.m., the same police officer received a call of an armed robbery at an Arby's restaurant located across the street from where he had checked out the three men. The robber was described as wearing a white T-shirt, orange overalls tied at the waist, and tennis shoes.

The robbery was described by three Arby's employees in identical terms. Two female employees had been cleaning the parking lot, when a man wearing orange overalls tied at the waist, a white T-shirt, and tennis shoes approached them and began a conversation. Later while the two employees were sharing a coke with their assistant manager at the rear of the building, the same man with the orange overalls approached them, displayed a gun, and ordered them against the wall.

The man forced the assistant manager to open the door of the restaurant, and took all three of the employees to the manager's office where the safe was located. He forced the assistant manager to open the safe and place the money in a paper sack. After the money was placed in the sack, the man forced the employees to walk about a block from the store. He then took the money, and told the employees to go back to the store. When the employees reached the store they called the police.

All three employees stated that the lights were on while they were in the store, and as they went through the service area they had ample opportunity to observe the robber. The three employees were shown a number of photographs by the police, and all three picked out a photograph of Simms as being the robber. At trial the police officer who had been called to the scene of the robbery identified Simms as the person he had checked on the streetcorner on the night in question. All three employees positively identified Simms at trial as the robber.

■ Simms first contends that the court unduly restricted his voir dire examination. The panel was asked if each person could follow the court's instructions, and each member had responded in the affirmative. Thereafter, Simms' counsel stated that there might be testimony that one or more witnesses had been convicted of a crime, and that the Judge would instruct them that previous criminal convictions could be considered only for the purpose of deciding the believability of the witnesses and the weight to be given to their testimony. Counsel then inquired if there was anyone who would not be able to follow such an instruction if it was given. The State objected on the ground that the panel had already been asked if they could follow the court's instruction regardless of whether or not they agreed with the law. The court sustained the objection and Simms now contends that this constituted error. In *State v. Olinghouse*, 605 S.W.2d 58, 68 (Mo. banc 1980) the court stated:

> * * * [A] trial court necessarily and properly has considerable discretion in control and conduct of voir dire examination of veniremen; and an appellate court will differ or interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion and a real probability of injury to the complaining party.

The questioning here was repetitious since the panel had already been asked if they could follow the court's instructions. Thus, no abuse of discretion is shown and

no harm is shown in sustaining the objection.

Simms next contends that the court erred in sustaining the State's objection to a portion of his final argument. In the course of his final argument, Simms' counsel attempted to argue that the State had failed to meet its burden of proof by not producing the photograph from which the three employees had made their positive identification of Simms. After the State objected, a bench conference was held during which Simms' counsel stated, "I'm not arguing or making an adverse inference to the failure of the State to bring it in, but merely that they didn't bring it out."

Counsel now contends that the court erred in sustaining the objection, in that he was attempting to argue that an unfavorable inference could be drawn from the State's failure to produce the photograph. Thus, Simms has completely reversed his position. At trial, he denied that he intended to argue that an adverse inference could be drawn, while on appeal he now contends that he was entitled to make the argument because he was arguing that the jury could draw such an adverse inference.

■ It is well established that issues not raised at trial are not preserved for appellate review. *State v. Patterson*, 569 S.W.2d 266, 269[2, 3] (Mo.App.1978). Furthermore, the trial court will not be convicted of error for a reason not presented to it or mentioned for the first time on appeal. *State v. Nelson*, 597 S.W.2d 250, 251[1–4] (Mo.App.1980). The disclaimer at trial of any intent to argue an adverse inference was carried through in the motion for new trial, which alleged the argument was proper on a burden of proof theory. The first time a contention was made that counsel was entitled to argue an adverse inference comes on appeal, after he had explicitly rejected that theory at trial. Thus, under *Patterson* and *Nelson* the point has not been preserved for review in that it was raised for the first time on appeal.

Simms finally contends that the court committed plain error in allowing the State

to call a rebuttal witness. Simms gave notice of an alibi defense and produced his mother, who testified that Simms, who had been living in his mother's home, had been with her from mid-night until 6:00 a.m. on the night in question. She stated that she had been taking medication which made her sleepy, and to avoid sleeping too much, she had awakened Simms at midnight on that night. She testified that he stayed up with her until 6:00 a.m. to keep her awake. She further testified that Simms had protested, because he had to go to work at Oak Hall, an apartment complex, the next morning.

In rebuttal the State called the payroll clerk of the real estate company which managed Oak Hall. The clerk testified that Simms had worked for the company only until June 3, 1980, and thus he was not employed there on the date in question.

■ No objection was made at trial to the rebuttal testimony, and Simms now contends that it was plain error for the court to allow such evidence because the existence of this witness was not revealed in response to Simms' request for discovery. The plain error doctrine should be used sparingly, and is limited to cases where it is shown that injustice or a miscarriage of justice would result if the rule were not invoked. *State v. Murphy,* 592 S.W.2d 727, 732[9] (Mo. banc 1979).

■ It is apparent that the rebuttal evidence was not aimed at rebutting the fact that Simms was with his mother at the time of the robbery, but rather impeached the mother's testimony that Simms was working at Oak Hall on September 1. In view of the positive identification of Simms by the three Arby's employees, plus the identification of Simms by the police officer who saw him in the immediate vicinity of the robbery less than an hour before it occurred, it cannot be said that admitting this testimony resulted in a miscarriage of justice. Moreover, admitting such testimony under almost identical circumstances was held to be proper in *State v. Mitchell,* 622 S.W.2d 791, 797 (Mo.App.1981). There the court held that rebuttal evidence admitted without prior revelation to the defendant

and which impeached a defense witness, but did not rebut the defense of an alibi, is not prohibited by *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) or *State v. Curtis,* 544 S.W.2d 580 (Mo. banc 1976).

■ As a subsidiary argument, Simms contends that the court erred in overruling his objection to the State's final argument that the jury could consider the fact that his mother had been impeached on the question of his employment in evaluating her testimony that Simms had been with her at the time of the robbery. This was a legitimate argument directed toward the credibility of Simms' mother, and the jury was certainly entitled to consider her credibility in deciding whether or not to believe her testimony. Thus, the court did not err in overruling the objection.

The judgment is affirmed.

All concur.