**STATE of Missouri, Respondent,**

v.

**Michael T. LACY, Appellant.**

**Michael T. LACY, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 59658, 61817.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1993.

Application to Transfer Denied
May 25, 1993.

David C. Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Michael T. Lacy, appellant, appeals his jury convictions in the Circuit Court of St. Louis County for Robbery in the First Degree, § 569.020 R.S.Mo.1986 (all further references shall be to R.S.Mo.1986 unless otherwise noted), and Armed Criminal Action, § 571.015, for which he was sentenced to consecutive terms of ten years and five years respectively. He also appeals the denial of his post-conviction relief (Rule 29.15) motion.

On appeal, appellant claims the trial court erred in (1) denying his motion to suppress physical evidence and his post-arrest confessions because these items were seized in violation of his fourth amendment right against unreasonable searches and seizures; (2) precluding the defense from asking venire members during voir dire whether they could follow MAI–CR 3d 310.06 to first determine if a confession was voluntary and to disregard it if they found it was not; (3) denying his *Batson* challenge to two of the state's peremptory jury strikes; (4) denying his motion to quash the venire panel after certain statements by a venireperson during voir dire. Appellant also claims the motion court erred in denying an evidentiary hearing on his Rule 29.15 motion because the record does not clearly refute his claim that trial counsel was ineffective. We affirm.

Appellant does not contest the sufficiency of the evidence so we briefly review the evidence in a light most favorable to the verdicts. On June 6, 1989, at approximately 2:40 a.m., appellant entered a Majik Market wearing a blue shirt with white stitching and blue jeans. He also wore a nylon stocking with a knot in it on his head covering his face. Armed with a knife, he ran behind the counter and told the two employees to give him all the money or he would kill them. He then took paper currency and rolled coins from the cash register and the safe, and told the employees to lie on the floor for half an hour after he left, while threatening to kill them if they did not comply with his demands. The police, called by the clerk at the gas station next door, arrived approximately thirty seconds or a minute after appellant left the store. After interviewing witnesses, St. Louis County Police Officers Leonard Eckstein and John Newsham conducted a search on foot towards an apartment complex on a route they thought that appellant possibly would have taken. After finding nothing, the officers were ready to leave the apartment complex when they heard an argument coming from an upstairs window

of an apartment. The officers stood under the window listening, and heard an argument between a male and a female but were unable to determine the gist of the argument. They were, however, able to discern that the female used the words "robbery" and "little Mike" in the same sentence, and that the male also used the word "robbery". After the argument ceased, the officers began to walk around to the front of the apartments in order to determine from what address the argument had come. After turning the corner to go around to the front of the apartments, the police noticed appellant walking towards them. When appellant saw the officers, he suddenly stopped and quickly walked into the same apartment from which the argument had been heard. The officers knocked several times and, after a while, appellant answered the door. Officer Eckstein spoke with appellant while Officer Newsham went back to the robbery scene to summon Detectives Edward Vitt and Michael Jones. Eventually, consent for a search of the apartment was obtained from appellant's mother, Mrs. Lacy, the lessee, and the apartment was searched. Pursuant to the search, the police found a wad of paper money between the mattress and box spring of the bed in the room in which appellant was staying. They also found, in a closet near the front door, a nylon stocking with a knot in it, a blue shirt with white stitching, a pair of blue jeans, and rolls of coins. The stocking, the shirt, the blue jeans, and the coin rolls were all taken back to the scene and identified by the victims as the clothing worn and coin rolls taken in the robbery. These items were also positively identified at trial as the clothing worn and money taken in the robbery. Appellant was subsequently arrested, gave a confession implicating himself as perpetrator of the robbery, and also walked through a reenactment of the crime with police. After a three-day trial, at which the items seized and the tape-recorded confession were admitted in evidence, the jury returned verdicts of guilty.

Appellant's first point is that the trial court erred in overruling his motion to suppress the items of evidence seized from Mrs. Lacy's apartment and the post-arrest confessions made by appellant because they were obtained pursuant to an illegal search in that the consent by Mrs. Lacy for the search was fraudulently obtained. Appellant contends that the reason for the search given by the police to Mrs. Lacy was pretextual because they told her they were looking for a radar detector stolen days before, and did not tell her of their intent to search for evidence of the Majik Market robbery until after she had consented to the search of her apartment for the radar detector.

Appellant's motion to suppress was heard and denied by the trial judge in Division 6 of the Circuit Court of St. Louis County. His subsequent motion for rehearing was also denied. Prior to trial in Division 9, appellant made a supplemental motion to suppress. Defense counsel and the prosecutor related to the court the procedural background of the motion to suppress, and also summarized the evidence adduced at the prior hearing. Further, Mrs. Lacy testified, and portions of the police reports relating to the search were admitted in evidence. The supplemental motion to suppress evidence and statements was denied.

▮▮▮ Ordinarily, a ruling on a pre-trial motion to suppress may not be asserted as a ground of error on appeal because the pre-trial motion to suppress and the admission at trial of the challenged evidence are not two distinct procedures. *State v. Vinzant*, 716 S.W.2d 367, 372 (Mo.App.1986). The real damage is not done until the evidence is introduced in the trial of the case. *Id.* Here, however, objections at trial to admission of the items seized and appellant's statements were made based upon the search and seizure issues previously put before the trial court in the pre-trial motion to suppress. Therefore, we shall refer to the pre-trial motion proceedings to determine the propriety of the trial court's admission of the evidence.

▮▮▮ Consensual searches conducted without a search warrant do not violate the Fourth Amendment so long as the consent

to search was voluntary and not the product of duress, coercion or fraud. *State v. Brown*, 814 S.W.2d 304, 307[4–6] (Mo.App. 1991). The voluntariness of the consent to the search is a question of fact to be determined from all the circumstances. *State v. Morr*, 811 S.W.2d 794, 797[2–4] (Mo.App. 1991). The burden of going forward with the evidence and the risk of nonpersuasion is upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled. § 542.296.6; *Brown*, at 307[4–6]. In reviewing the trial court's ruling, we look only to determine whether the evidence was sufficient to support it. *State v. Thompson*, 820 S.W.2d 591, 594[6, 7] (Mo.App.1991). We consider all facts and reasonable inferences favorable to the challenged order and disregard contrary evidence and inferences, if the evidence is otherwise sufficient to support the trial court's ruling. *Brown*, at 307[1–3]. We also defer to the trial court's superior opportunity to determine the credibility of the witnesses and the weight of the evidence. *Id.*

At the first hearing on the motion to suppress, Officer Newsham testified that after speaking with appellant and learning his name, he recognized it as the name of the person who was suspected of stealing a radar detector from a car in the very same apartment complex. He testified he had been informed that fingerprints lifted from the car from which the radar detector was taken matched those of Michael Lacy. Upon making the connection, Officer Newsham spoke with Mrs. Lacy and informed her that he was interested in appellant for the radar detector larceny, and that he had reason to believe he did hide a radar detector in her house. Mrs. Lacy then gave consent to search her apartment by signing and indicating she understood a St. Louis County Police consent to search form, witnessed by Officer Newsham and Detective Jones. Officer Newsham testified he was in fact looking for the radar detector, that he never told Mrs. Lacy he was looking for evidence of a robbery, but that Detective Vitt came in the room as Mrs. Lacy was completing or signing the form and informed her that he would like to conduct a search for evidence of a robbery.

Detective Vitt testified that he entered the room when Officer Newsham was going through the consent to search form with Mrs. Lacy, and that he asked several questions about the argument overheard by Officers Newsham and Eckstein. He then left the room to speak with appellant and a cab driver who had been dispatched to Mrs. Lacy's address. When he came back in he told Mrs. Lacy that he thought her son possibly was involved in the robbery due to some of the statements he had given, and asked if he could search the premises for evidence. Mrs. Lacy consented to the search, but Officer Vitt did not have her sign a consent form since one had already been signed by her.

Appellant presented no evidence at the first motion to suppress hearing. At the second hearing on the motion to suppress held prior to trial, the trial court heard Mrs. Lacy's testimony to the effect that she did not know of a robbery, and that Detective Vitt did not seek consent to search for evidence of a robbery until after the consented search had commenced. Mrs. Lacy testified that after Detective Vitt told her about the Majik Market robbery, she mistakenly assumed that the radar detector previously alluded to had been taken in that robbery. She also acknowledged that there was nothing on the consent form which she signed saying the police were limited to looking for a radar detector.

 The rulings on the motion to suppress did not contain findings of fact or conclusions of law, and the record does not reflect that any were requested. Therefore, we deem all facts to have been found in accordance with the trial court's ruling. *State v. Morr*, 811 S.W.2d at 796[1]. In ruling on appellant's motion to suppress, the trial court, after hearing the witnesses and assessing their credibility, implicitly rejected appellant's intimations that the search for the radar detector was merely a ruse to search for evidence of the Majik Market robbery, and implicitly found that the state had carried its burden of showing

that Mrs. Lacy's consent was voluntary and not fraudulently obtained. Officer Newsham testified, as previously noted, that he recognized appellant's name as that of a suspect in a previous crime, that he obtained consent to search for that previous crime, and that he was in fact looking for evidence of that previous crime. The evidence of the Majik Market robbery found within the scope of the search for the radar detector could legally be seized under the plain view doctrine, an exception to the warrant requirement. *See, State v. Holland,* 781 S.W.2d 808, 815[11, 12] (Mo. App.1989). As a result, appellant's statements obtained pursuant to the arrest based on this evidence were thus also admissible. We find there is a sufficient basis in evidence to uphold the trial court's ruling, and there was no error in admitting in evidence the items seized and appellant's statements. Point denied.

In his second point, appellant contends that should this court uphold the admission of appellant's confessions, the trial court erred in precluding him from asking the venire members if they could keep an open mind after hearing proof of confessions and if they could follow MAI–CR 3d 310.06 by first determining if a confession was voluntary and to disregard it if they found it was not. Appellant argues that by denying him the opportunity to examine the venire for bias and prejudice regarding confessions, the trial court may well have deprived him of his right to a fair and impartial trial and unquestionably denied him his right to make informed and intelligent exercise of his peremptory strikes and strikes for cause.

The following took place when defense counsel attempted to ask the question now the subject of this point on appeal:

[DEFENSE COUNSEL:] Now, I'm going to ask you the question that if you heard evidence from the State that Michael told the police officer in a tape recorded statement—

[PROSECUTOR:] Judge, I'll object to going into any of the evidence right now. I didn't go into the evidence.

THE COURT: Do you want to approach the bench?

(The following proceedings were had at side bar out of the hearing of the prospective jury panel.)

THE COURT: Would you phrase the question for me, please?

\* \* \*

[DEFENSE COUNSEL:] If the Court instructs you that a statement was made by the Defendant would you be able to under all the circumstances surrounding and attending the making of the statement decide whether it was freely and voluntarily made under all of the circumstances, and that is specifically from the instruction, and I would ask them if they have any opinions or deep beliefs that would prevent them from following the Court's instruction?

I would ask them if they also would be able to if the Court instructed them that when considering such a statement whether the Defendant understood what he was saying and doing and if the Court instructed them in that fashion would they be able to follow the Court's instructions and would they have any opinions or beliefs that wouldn't allow—prevent them from following the instructions of the Court?

[PROSECUTOR:] Judge, I don't believe the law is that during voir dire counsel can tell the Jury what he anticipates what the instructions say, because if that were the law then counsel—both could get up there and just say "I anticipate that the Court will instruct you that", and I can read Instruction 4 about the presumption of innocence. I could read Instruction 2. I think this is—

THE COURT: I'm going to sustain your objection. You may ask the Jury whether or not they can follow the Court's instructions, but I think we'll get into an area of argument and therefore I'm not going to allow it.

Defense counsel, citing *State v. Mosier,* 102 S.W.2d 620, 624 (Mo.1937), asserted that the proper form for asking questions about specific instructions had been fol-

lowed. The trial court, however, remained steadfast in disallowing the question.

One purpose of voir dire is to expose juror bias or prejudice which could form the basis of a challenge for cause or be useful in utilizing peremptory challenges. *State v. Taylor*, 742 S.W.2d 625, 627[1, 2] (Mo.App.1988). Both the defendant and the state are entitled to selection of a fair and impartial jury. *Id.* While questions on voir dire which are calculated to expose bias or prejudice should be liberally permitted, questions calculated to create prejudice should be vigorously denied. *Id.* Controversy often arises when proposed jury questions have a dual or ambivalent character in that they may, arguably, tend to expose or create prejudice depending on the subjective viewpoint. *Id.* The trial court, therefore, is given broad discretion in controlling voir dire especially concerning the nature, extent and propriety of questions addressed to the venire. *Id.*

The phrasing of voir dire questions in a manner which preconditions the jurors' minds to react even subconsciously in a particular way to anticipated evidence is an abuse of counsel's privilege to examine prospective jurors. *Id.*, at 627[3, 4]. We may not disturb the trial court's exercise of discretionary control over voir dire examination in the absence of manifest abuse and a real probability of injury. *Id.* In *State v. Simms*, 643 S.W.2d 87 (Mo.App. 1982), the trial court precluded defendant from inquiring of the venire whether there was anyone who would not be able to follow the specific instruction that witnesses' previous criminal convictions could be considered only for the purpose of deciding the believability of the witnesses and the weight to be given their testimony. The court in *Simms* affirmed the trial court's disallowance of the particular question, holding that the questioning was repetitious since the panel had already been asked if they could follow the court's instructions. *Id.*, at 89[1].

Here, the venire had been asked by the court and by the prosecutor if there was anyone who could not follow the law and the instructions as given to them by the trial court. No one on the venire indicated an inability or unwillingness to do so. The trial court viewed defense counsel's proffered question as getting into an area of argument, and disallowed it, but did allow defense counsel to inquire whether the venirepersons could follow the court's instructions. We find no abuse of discretion. Point denied.

Appellant's third point is that the trial court erred in overruling his challenge to two of the state's peremptory jury strikes based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), because the pretextual race-neutral explanations given by the prosecutor infer a racial motivation in the exercise of the challenged strikes.

The record reflects that there were originally five black persons on the venire, two of whom were stricken for cause. The state used peremptory strikes to remove two black venirepersons, Ms. Parker and Mr. Brown. Ms. Parker was the subject of a previous motion to strike for cause by the prosecutor which was denied. Upon a timely *Batson* challenge to the state's peremptory strikes, the trial court sought race-neutral reasons from the prosecutor for the exercise of these strikes. Regarding Ms. Parker, the prosecutor explained that he had originally sought to have her stricken for cause, and subsequently used a peremptory strike to remove her because she had a nephew in the penitentiary and another nephew awaiting trial on an armed robbery charge, and expressed an inclination to sympathize with the defendant. The prosecutor explained that he felt uneasy about having persons who were close to someone with a pending case on the jury, no matter what color they are.

As to Mr. Brown, the prosecutor explained that his reason was race-neutral, but not appearance neutral. The prosecutor explained that Mr. Brown wore sunglasses throughout the voir dire, he wore long hair in a ponytail, and he was a flashy dresser. The prosecutor also noted that Mr. Brown was a single young man which gave notice that he didn't have as strong a stake in the community as the state would

**630**

like. The prosecutor stated that he didn't ask Mr. Brown why he wore sunglasses for fear of embarrassing him, and that his strike was based on looks.

■ A reviewing court will only set aside a trial court's finding as to whether the prosecutor discriminated in the exercise of his peremptory challenges if it is clearly erroneous. *State v. Blankenship*, 830 S.W.2d 1, 15[21] (Mo. banc 1992). A finding is deemed clearly erroneous where the reviewing court is left with a definite and firm impression that a mistake has been committed. *Id.* The state is not required to establish that its grounds would warrant excusal for cause. *Id.* Instead, the prosecutor is permitted to exercise his peremptory challenges on the basis of his legitimate "hunches" and past experiences so long as racial discrimination is not the motive. *Id.*

■ Here, the trial court found that the state gave sufficient race-neutral grounds on which to sustain the challenged strikes. The record does not support appellant's contentions that similarly situated white venirepersons, and other venirepersons with a possible defense bias, were not struck. For example, Mr. Dernbach, the young, single, white male to whom appellant points as being similarly situated to Mr. Brown, did not wear sunglasses, did not wear long hair in a ponytail, but had been the victim of crime, and had friends and neighbors who were victims of violent crime. The record shows also that Mr. Dernbach was the subject of a defense motion to strike for cause based on his relationship with victims of crime, so it is apparent that even defense counsel felt Mr. Dernbach would be a state's juror. Thus, the record does not support appellant's contention that venirepersons Brown and Dernbach were similarly situated.

Appellant also contends that the prosecutor's failure to strike Ms. Wolfe and Mr. Foster, who are white and whose answers in voir dire suggested actual cause to suspect anti-prosecution bias, shows that the prosecutor's reasons for striking Mr. Brown were pretextual. Ms. Wolfe indicated that her brother was a criminal defense attorney, and that she had a tendency to

judge the performance of attorneys in the case. However, the record indicates that she stated that she believed she could be a juror and view the evidence without letting the fact that her brother is a criminal defense attorney interfere with her ability to do so. Therefore, even if her answers demonstrate a defense bias, as appellant contends, she rehabilitated herself by stating that she would not let that interfere with her duties as a juror. Mr. Foster stated that his home had been burglarized twice and, in response to the court's inquiry, that he did not know if the police turned up any fingerprints and that the police "don't tell you nothing, anyway." However, he stated also that there was nothing about these previous incidents which would influence him in the case and that he would not hold the fact that the burglary was not solved against the state or the defendant. Thus, the record does not support appellant's contentions that the prosecutor's failure to strike venirepersons Wolfe and Foster suggests pretext in the reason given for the striking of venireperson Brown. Since the trial court's ruling was not clearly erroneous, defendant's *Batson* claim is denied.

Appellant's fourth point is that the trial court erred in denying his motion to quash the venire panel on the basis of comments by venireperson Shields which appellant claimed poisoned the venire panel and denied his right to a fair trial by an impartial jury. Mr. Shields stated that he knew appellant from dealings with him and his family in an apartment complex about two miles from where the crime had been committed, and that he had predetermined ideas about the case. In response to defense counsel's inquiry, Mr. Shields stated that he did not believe he could be a fair and impartial juror and that from what he knew in the past he would have a predetermined verdict. At side bar, defense counsel requested the court to quash the venire and get another jury. The record does not reflect that defense counsel sought any remedy short of quashing the venire. Mr. Shields was stricken for cause.

■ Generally, disqualification of an individual juror for bias or expression of an

opinion is not sufficient for a challenge of the entire venire panel. *State v. Evans*, 802 S.W.2d 507, 514[17–19] (Mo. banc 1991). The entire venire will be quashed only if the answer is so inflammatory and prejudicial that it can be said that appellant's right to a fair trial has been infringed. *Id.* The trial court is vested with broad discretion in determining whether a jury panel should be dismissed, and its ruling will not be disturbed on appeal absent a clear abuse of discretion. *Id.* Here, upon reviewing the record before us, we cannot say that Mr. Shields' comments, in the context of voir dire, were such as to inflame or prejudice the other prospective jurors. We find no abuse of discretion in overruling appellant's motion to quash the venire. Point denied.

Appellant's fifth and final point is that the motion court erred in denying an evidentiary hearing on his Rule 29.15 motion based on a claim of ineffective assistance of counsel. At the sentencing hearing, appellant stated in response to the trial court's inquiry that there were witnesses which he had wanted to testify at trial who were not called. The trial court, upon inquiring of appellant and advising him of his right to proceed under Rule 29.15, found that appellant had raised issues which, if proven, produce probable cause concerning ineffective assistance of counsel.

The motion court, in its findings of fact, stated that it had held a pre-hearing conference on appellant's 29.15 motion and that it concluded an evidentiary hearing would not be held. In its conclusions of law the trial court stated that "[t]rial counsel did call three alibi witnesses on Movant's behalf. To use three alibi witnesses and not all six is a matter of trial strategy."

Review of the denial of appellant's Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Taylor v. State*, 782 S.W.2d 741, 743 (Mo.App.1989). The motion court's findings and conclusions will be deemed clearly erroneous only if, after a review of the entire record, this court is

left with a definite and firm impression that a mistake has been made. *Id.*

To prevail on an ineffective assistance of counsel claim, a movant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). To prove deficient performance a movant must show that counsel's acts or omissions were outside the range of professionally competent assistance. *Id.* To do this movant must overcome the presumption that counsel's challenged acts or omissions were sound trial strategy. *State v. Flenoid*, 838 S.W.2d 462, 470[18–21] (Mo.App.1992). To show prejudice, a movant must show there was a reasonable probability that, but for the errors of the attorney, the jury would have had reasonable doubt respecting his guilt. *Id.* If a movant makes an insufficient showing on either the deficient performance component or the prejudice component, the court need not address the other component. *Id.*

To be entitled to an evidentiary hearing on the issue of ineffective assistance of counsel, a movant seeking relief under Rule 29.15 must plead facts, not conclusions, which, if true, would warrant relief. *Id.*, at 470[22]. The allegations must be unrefuted by the record, and the matters complained of must have prejudiced the movant. *Id.* A hearing is not required if the motion, files, and records of the case conclusively show that the movant is not entitled to relief. Rule 29.15(g); *id.*

Appellant alleged in his Rule 29.15 motion that defense counsel was ineffective for failing to call three witnesses, Demetrius Bryant, Shirleen Lacy and Michael Lacy, Sr., whose testimony would have provided appellant with an alibi to the charges against him. He alleged that he had informed counsel of these witnesses, that all three were available and willing to testify for him, and that counsel could have easily located these witnesses at their home addresses. He alleged also that these three witnesses would have testified that at the time the robbery was committed, appellant

was with them at the hospital visiting appellant's sick nephew, and that appellant accompanied them during the entire visit, from shortly after 6:00 p.m. on June 5, 1989, to after 3:00 a.m. on June 6, 1989. Such testimony, appellant alleged, would have provided an alibi to the charges against him, and counsel's failure to call these witnesses denied him the opportunity to present the full range of alibi evidence at trial. But for counsel's failure, appellant alleged, the reasonable probability exists that he would have been acquitted.

Appellant argues on appeal that the motion court's conclusion that counsel made a strategic decision in not calling the three alibi witnesses is clearly erroneous because the existing record has no testimony by defense counsel claiming this was a strategic decision, and the motion court's conclusion constitutes sheer conjecture unsupported by the record. *Fingers v. State,* 680 S.W.2d 377, 378–9 (Mo.App.1984); *Chambers v. State,* 781 S.W.2d 116, 117 (Mo.App.1989). Thus, appellant argues, an evidentiary hearing on his ineffective assistance claim is required.

■ Rarely do the contents of a Rule 29.15 motion establish that an alleged dereliction was part of trial strategy. *State v. Young,* 844 S.W.2d 541, 548 (Mo.App.E.D. 1992). A consideration of the record as a whole, however, can demonstrate that an alleged dereliction was, in fact, a part of trial strategy. *Id.* In such event, an evidentiary hearing is not necessary. *Id.*

■ Here, the trial transcript shows that Lawanda Lacy, appellant's sister, testified she was almost positive that appellant left the hospital at 2:30 a.m. on June 6, 1989, and that it was a twenty to thirty minute drive from the hospital to her mother's apartment. Mr. Martini Haynes, a friend of Mrs. Lacy, testified that he arrived at the hospital at approximately 1:00 a.m., left the hospital at approximately 2:15 a.m. with Mrs. Lacy, appellant, and appellant's two sisters, and arrived home at Mrs. Lacy's apartment at approximately 2:40 to 2:45 a.m. He testified that when they got home, appellant tried on some pants and then went into the family room. Mrs.

Lacy, appellant's mother, testified that she and appellant were home alone together all evening watching television and ate dinner together. At approximately 9:00 p.m. that evening she received a phone call from her daughter requesting her presence at the hospital. Her nephew, who had just arrived ten minutes earlier, drove her and appellant to the hospital, arriving there at approximately 10:00 p.m. She testified to arriving home from the hospital between 2:30 and 2:40 a.m., and having specific reason to remember that because upon entering her apartment and going upstairs, she looked at the clock and noticed it was 2:45 a.m. She testified further that just before she noticed that it was 2:45 a.m. she, appellant, and Mr. Haynes were discussing her grandson's condition, and that appellant was in the bedroom across the hall from her bedroom.

The record before us shows that the alibi testimony of the witnesses outlined in appellant's motion would have conflicted in some respects with the alibi testimony of the witnesses called at trial. Cumulatively, the testimony of Mrs. Lacy, Mr. Haynes and Lawanda Lacy placed appellant at home until 9:00 p.m., leaving the hospital no later than 2:30 a.m., and arriving home no later than 2:40 or 2:45 a.m. As alleged in his motion, appellant's other witnesses would have placed appellant at the hospital from shortly after 6:00 p.m. until after 3:00 a.m. Such inconsistencies in testimony as to appellant's location at the various times would not have served appellant in his defense of alibi. Based on the record before us, we cannot say that the motion court was clearly erroneous in concluding that the decision not to call these witnesses was a matter of trial strategy. Point denied.

Judgments affirmed.

CARL R. GAERTNER, P.J., and CRAHAN, J., concur.