

# In the Missouri Court of Appeals
# Eastern District

### DIVISION III

| | | |
|---|---|---|
| FRANKLIN RILEY, | ) | No. ED100978 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Marion County |
| vs. | ) | |
| | ) | Honorable Rachel Bringer Shepherd |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED:  November 12, 2014 |

Introduction

Franklin Riley ("Riley") appeals from the judgment of the motion court denying his Rule 29.15[1] motion for post-conviction relief following an evidentiary hearing.  Riley claims that the motion court clearly erred in denying his motion because a review of the record leaves a definite and firm impression that he was denied effective assistance of counsel.  Specifically, Riley asserts that trial counsel rendered ineffective assistance by: 1) failing to object and seek a mistrial after the venire panel had been tainted by certain inflammatory and prejudicial remarks made by two panel members, and 2) failing to object to a portion of the testimony by Corporal Matt Wilt ("Wilt") that constituted improper testimonial hearsay.  Because Riley has failed to

---

[1] All rule references are to Mo. R. Crim. P. (2013).

show he was prejudiced by either of trial counsel's failures to object, we affirm the judgment of the motion court.

Factual and Procedural History

Riley was charged by information with attempt to manufacture or produce a controlled substance and possession of anhydrous ammonia in a non-approved container. On March 16, 2011, the case was tried before a jury in the Circuit Court of Marion County.

During voir dire of the jury panel, the prosecutor had the following exchange with panel member 48:

PROSECUTOR: Are you willing to listen to all the evidence before you decide whether somebody's guilty or not?

PANEL MEMBER 48: Well, yeah.

PROSECUTOR: Okay. Have you already made up your mind that he's guilty?

PANEL MEMBER 48: Pretty much, yeah.

PROSECUTOR: How could you do that, sir, without having heard any of the evidence?

PANEL MEMBER 48: Well, I know him – him and his dad.

PROSECUTOR: Okay. All right. Well, that's a whole different question.

PANEL MEMBER 48: All right. Sorry.

PROSECUTOR: Anybody else here know the defendant? Okay. Got a few hands. All right. And number 48, you do, too?

PANEL MEMBER 48: Yes.

PROSECUTOR: And you know his dad?

PANEL MEMBER 48: Uh-huh.

2

PROSECUTOR:  And because you know his dad, you think you don't need to hear any evidence?  You already know he's guilty?

PANEL MEMBER 48:  Yeah.

PROSECUTOR:  Yes?

PANEL MEMBER 48:  95 percent chance, yeah.

PROSECUTOR:  All right.  Okay.  Thank you, sir.

The prosecutor then had the following exchange with panel member 13:

PROSECUTOR:  All right.  Juror number 13, you know the defendant?

PANEL MEMBER 13:  Yes.

PROSECUTOR:  All right.  And would you say that you were friends with him or his family or –

PANEL MEMBER 13:  Yes.

PROSECUTOR:  How do you know him?

PANEL MEMBER 13:  His mom and dad.

PROSECUTOR:  Okay.  So you know his dad, too?

PANEL MEMBER 13:  Yeah.

PROSECUTOR:  Okay.  Are you willing to listen to the evidence to decide whether he's guilty or not even though you know his dad, too?

PANEL MEMBER 13:  I would have to say he's guilty.

PROSECUTOR:  Okay.  How could you know, ma'am?

PANEL MEMBER 13:   Well, we had problems.  He was –

PROSECUTOR:  Wait.  Wait.  Have you heard any evidence yet?

PANEL MEMBER 13:  No.  But I know –

PROSECUTOR: Okay. Do you know what he's charged with?

PANEL MEMBER 13: Drugs.

PROSECUTOR: Okay. So would it be unfair for you to be on this jury?

PANEL MEMBER 13: Yeah.

PROSECUTOR: Okay. Yeah. Okay. All right. Thank you. I'll just stop there.

Other panel members stated that they knew Riley or his family, but none expressed any difficulty in serving impartially on the jury. The prosecutor asked the panel members if any of them would have a problem following the court's instructions or deciding the case based on the evidence heard in the courtroom. None of the panel members raised their hands. Likewise, none of the other panel members raised their hands when asked whether they had a problem with Riley being presumed innocent. Panel members 13 and 48 were stricken for cause, and the jury was impaneled.

At trial, Wilt, Officer Jonathan Borgmeyer ("Borgmeyer"), Trooper Clinton Duppong ("Duppong"), and Detective Tyler Wheeler ("Wheeler") of the NEMO Drug Task Force testified. Wilt, Borgmeyer, Duppong, and Wheeler testified that the following occurred the night Riley was arrested:

Wilt was on duty when he received a call from dispatch that a man later identified as Louis Goodwin ("Goodwin") had witnessed an anhydrous theft in Illinois and was following the three suspects' vehicle into Missouri. Wilt and Borgmeyer both responded, giving chase as the vehicle entered Missouri. Borgmeyer caught up with the suspects' vehicle first, with Goodwin's car between Borgmeyer's car and the suspects' vehicle. When Borgmeyer activated his emergency lights and siren, he observed an object come over the top of Goodwin's vehicle, splatter a liquid, and fall to the highway. Borgmeyer also observed a white cup being thrown out

4

of the driver's side of the suspects' vehicle and land on the highway. Wilt observed the cup rolling along the highway with a white gaseous cloud coming out of the cup. Wilt explained that his observation of the gaseous cloud is consistent with his training and experience concerning anhydrous ammonia. Wheeler confirmed that liquid anhydrous ammonia, when exposed to oxygen, turns to gas and evaporates in a large white cloud. Wilt identified State's Exhibit 1 as a photograph he took of Goodwin's windshield the night of the arrest. Wilt testified that the photograph showed a white film substance that he believed to be anhydrous ammonia on the windshield.

The suspects' vehicle pulled over roughly one mile later, at which point Wilt also arrived at the scene. Borgmeyer and Wilt ordered the three men in the car to put their hands out of the windows. Duane Johnson ("Johnson") was in the driver's seat, Chris Ross ("Ross") was in the back seat, and Riley was in the front passenger seat. Wilt approached the vehicle and detected a strong odor of anhydrous ammonia. Wilt testified he became familiar with anhydrous ammonia growing up on a farm where anhydrous ammonia was used as a fertilizer. The officers found a black bag in the passenger seat with Riley that contained Mason jars. Wheeler testified Mason jars are commonly used in methamphetamine labs. Crushed pseudoephedrine tablets were also found on the floor of the passenger seat. Wheeler testified that pseudoephedrine is an ingredient in methamphetamine. A broken pitcher, with the lid off, was found on the highway roughly one mile behind where the suspects' vehicle came to a stop.

During Wilt's testimony, he had the following exchange with the prosecutor without objection from trial counsel:

PROSECUTOR: Okay. Did you talk to Mr. Goodwin at the scene?

WILT: Yes.

5

PROSECUTOR: And did you – did he tell you that he had been slightly injured?

WILT: Yes.

PROSECUTOR: What did he tell you?

WILT: He said he was waving at the officer to go around him with his hand out the window and his arm and his side of his face was slightly burned when the subject threw a pitcher out, which hit his vehicle, and the fumes burned his arm and face.

PROSECUTOR: Okay. Did you see that he needed medical treatment at all?

WILT: I didn't observe any visible injuries, no.

PROSECUTOR: In fact, did he refuse medical treatment?

WILT: Yes.

PROSECUTOR: Okay. Now, you didn't see that happen, did you?

WILT: No, I did not see the pitcher.

PROSECUTOR: You were still back farther behind?

WILT: Yes, that's correct.

Goodwin was not called as a witness to testify. The only evidence of Goodwin's statements about the pitcher and his injuries was the testimony of Wilt.

The jury returned guilty verdicts on both counts. On April 19, 2011, Riley was sentenced to consecutive prison terms of fifteen years on Count I and four years on Count II. On direct appeal, this Court issued a *per curiam* opinion affirming Riley's convictions in State v. Riley, 369 S.W.3d 85 (Mo. App. E.D. 2012). On September 7, 2012, Riley filed a *pro se* motion pursuant to Rule 29.15 to vacate, set aside, or correct the judgment. Appointed counsel filed an amended motion on Riley's behalf on March 1, 2013. In his amended motion, Riley alleged, *inter alia*, that trial counsel rendered ineffective assistance of counsel by failing to object or

6

request a mistrial after the prejudicial remarks of panel members 13 and 48, and by failing to object to Wilt's improper hearsay testimony concerning Goodwin's out-of-court statements.[2]

On August 5, 2013, an evidentiary hearing on Riley's motion was held before the motion court. Both Riley and trial counsel testified at the hearing. Trial counsel testified that she had no specific trial strategy in not objecting and seeking a mistrial after the remarks made by panel members 13 and 48. Trial counsel testified that her strategy was instead to strike panel members 13 and 48 from the jury for cause. Trial counsel further testified that she had no evidence that any of the other panel members listened to panel members 13 and 48 or prejudged the case before listening to the evidence. Finally, trial counsel testified that there was no trial strategy in not objecting to the portion of Wilt's testimony in which he relayed what Goodwin had told him.

On December 21, 2013, the motion court entered its findings of fact, conclusions of law, judgment and order denying Riley's Rule 29.15 motion. The motion court found that trial counsel's failure to object or request a mistrial after the remarks of panel members 13 and 48 did not deprive Riley of a fair trial, and that Riley failed to show a reasonable probability that the outcome of the trial would have been different had a mistrial been requested. The motion court noted that panel members 13 and 48 were stricken for cause, their statements were not emphasized, and substantial evidence of Riley's guilt was presented at trial. For these reasons, the motion court concluded that Riley "failed to demonstrate prejudice and [ ] failed to show how the extraordinary remedy of a mistrial was warranted." The motion court also found that Riley was not prejudiced by trial counsel's failure to object to the hearsay statements in Wilt's testimony. The motion court concluded that Riley failed to show a reasonable probability that

---

[2] Riley also advanced two additional arguments in his amended motion: that trial counsel was ineffective in failing to object to the use of Goodwin's hearsay statements during the State's closing argument, and that trial counsel was ineffective in failing to object to the State's questioning about Riley's exercise of his Miranda rights. These arguments are not raised on appeal, so we do not consider them.

the outcome of the trial would have been different had the hearsay statements not been admitted, noting that the State presented substantial other evidence of Riley's guilt. This appeal follows.

## Points on Appeal

Riley presents two points on appeal. In his first point on appeal, Riley argues he was denied effective assistance of counsel because counsel failed to object and seek a mistrial after the venire panel had been tainted by inflammatory and prejudicial remarks made by two panel members. Riley contends that he was prejudiced by trial counsel's failure to object and seek a mistrial because had trial counsel moved for a mistrial, there is a reasonable probability the court would have sustained the motion, assuring Riley of a fair and impartial trial and a different outcome at trial. In his second point on appeal, Riley argues he was denied effective assistance of counsel because trial counsel did not object to Wilt's testimony that Goodwin told him that a pitcher had been thrown from the vehicle in which Riley was a passenger, and that the fumes from the pitcher burned his arm and face. Riley contends that this testimony constituted improper testimonial hearsay and posits that had an objection been made, there is a reasonable probability it would have been sustained by the trial court. Riley further contends that without the improper hearsay testimony, a reasonable probability exists that the outcome of the trial would have been different.

## Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15; Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court, after

8

reviewing the entire record, is left with a "definite and firm impression that a mistake has been made." Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

In order to prevail on a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence that (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) he was prejudiced thereby. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To satisfy the performance prong of the Strickland test, a movant must overcome the strong presumption that any challenged action was sound trial strategy. To overcome this presumption, a movant must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). To satisfy the prejudice prong, the movant must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id. A movant must satisfy both the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. "In reviewing such a claim, courts are not required to consider both prongs; if a [movant] fails to satisfy one prong, the court need not consider the other." Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland, 466 U.S. at 697).

## Discussion

### I. Riley has failed to show that he was prejudiced by trial counsel's failure to object and seek a mistrial following the statements of panel members 13 and 48.

Riley's first point focuses on the jury selection process. In particular, Riley contends that the entire venire panel was tainted by the inflammatory and prejudicial remarks made by panel members 13 and 48, such that Riley could not receive a fair trial. Riley argues that although

panel members 13 and 48 were stricken for cause and removed from the jury panel, their statements during voir dire constituted "extremely prejudicial character evidence" that tainted the rest of the panel. Riley maintains that reasonably competent trial counsel would have objected to these statements and motioned the trial court for a mistrial. Riley alleges that he was prejudiced because, had trial counsel objected and sought a mistrial, the trial court would have granted the request due to the inflammatory and prejudicial nature of the remarks. Riley therefore reasons that, but for trial counsel's ineffective assistance, he would have been assured a fair and impartial jury and a reasonable probability exists that the outcome of the trial would have been different.

In order to satisfy the prejudice prong of the Strickland test, Riley must show by a preponderance of the evidence that, absent trial counsel's failure to object to the statements of panel members 13 and 48, there is a reasonable probability that the outcome of the trial would have been different. The motion court found that trial counsel's failure to object or seek a mistrial did not deprive Riley of a fair trial, and that Riley failed to show the result of the trial would have been different had a mistrial been requested. The motion court concluded that Riley failed to show that the "extraordinary remedy" of a mistrial was warranted and failed to demonstrate prejudice. We agree.

Fundamental to Riley's argument is the reasonable probability that the trial court would have favorably ruled upon trial counsel's request for mistrial following the statements made by panel members 13 and 48. However, disqualification of an individual panel member for bias or expression of an opinion during voir dire is generally not sufficient for a challenge of the entire venire panel. State v. Evans, 802 S.W.2d 507, 514 (Mo. banc 1991). A mistrial will be declared and the entire venire will be quashed only if the statement made by an individual panel member is so inflammatory and prejudicial that it can be said that appellant's right to a fair trial has been

10

infringed.  Id.  Even where particular panel members give prejudicial or biased answers, disqualification of the entire panel is not required unless the statements rise to this level.  State v. Reed, 789 S.W.2d 140, 141 (Mo. App. S.D. 1990).

Courts have considered statements similar to those made by panel members 13 and 48 and have concluded that such statements were not so inflammatory and prejudicial as to taint the entire venire panel and require a mistrial.  For example, in State v. Lacy, 851 S.W.2d 623 (Mo. App. E.D. 1993), a panel member stated that he knew the defendant "from dealings with him and his family" and he "did not believe he could be a fair and impartial juror and that from what he knew in the past he would have a predetermined verdict."  Id. at 630.  Defense counsel requested the court to quash the venire panel.  The request was denied, but the panel member was stricken for cause.  Id.  On direct appeal, the court upheld the denial of the motion to quash the venire, concluding that the panel member's comments, in the context of voir dire, were not "such as to inflame or prejudice the other prospective jurors."  Id. at 631.  Similarly, in Skipper v. State, 209 S.W.3d 552 (Mo. App. S.D. 2006), the venire panel was asked whether anyone felt they would have trouble presuming the defendant was innocent.  One of the panel members stated that, based on "things she knew from the past when movant was married to a classmate of hers, it would be kind of hard."  Id. at 555.  Defense counsel moved for a mistrial.  The request was denied, but the panel member was stricken for cause.  The defendant sought post-conviction relief for his counsel's failure to assert that the trial court's denial of the request for a mistrial was in error.  On appeal, the court held that the venire person's statement was insufficient to taint the entire jury panel, as she was only responding to the question asked and did not provide any detail as to why she could not presume the defendant was innocent.  Id. at 555-556.

11

The remarks made by the venire persons in <u>Lacy</u> and <u>Skipper</u> are very similar to the statements at issue in this case. Both panel members 13 and 48 stated that they knew Riley and his parents and already believed he was guilty without hearing any of the evidence. Notably, neither panel member provided any details as to how they knew Riley or his parents, nor did either cite any specific reason for believing Riley to be guilty. The only reason given by panel member 48 for believing Riley to be guilty was that he knew Riley and his father. Panel member 13 stated that she and Riley "had problems," but gave no further explanation or detail.

Further, the record contains no evidence that any of the remaining veniremen were in fact biased or tainted by the statements of panel members 13 and 48. When questioned, none of the other panel members indicated that they could not follow the court's instructions or decide the case based solely on the evidence heard in the courtroom. Likewise, none of the other panel members indicated that they had a problem with Riley being presumed innocent. Trial counsel testified at the evidentiary hearing that there was no indication that the other panel members had made up their minds and decided the case along with panel members 13 and 48 instead of listening to the evidence. The record also shows that the negative statements made by panel members 13 and 48 were neither repeated nor emphasized during the trial.

Although panel members 13 and 48 made negative statements during voir dire about Riley, these statements were not so inflammatory and prejudicial as to taint the entire venire panel against Riley and require a mistrial. The motion court therefore did not clearly err in denying Riley's motion. Because Riley has failed to show that there is a reasonable probability the trial court would have granted a mistrial or that the remaining panel members were biased by the statements made by panel members 13 and 48, there is no reasonable probability that the outcome of the trial would have been different had trial counsel objected and requested a

12

mistrial. Riley suffered no prejudice as a result of trial counsel's failure to do so. Point One is denied.

**II. Riley has failed to show that he was prejudiced by trial counsel's failure to object to Wilt's hearsay testimony.**

Point Two addresses trial counsel's failure to object to Wilt's improper hearsay testimony. Riley maintains that because no exception to the hearsay rule applied to Wilt's testimony of the out-of-court statements made by Goodwin, and because trial counsel's failure to object to such testimony was not part of any reasonable trial strategy, reasonably competent counsel would have objected to Wilt's hearsay testimony. We agree.

The record clearly shows the hearsay nature of the testimony at issue. We acknowledge that a trial attorney's failure to object to otherwise inadmissible evidence may constitute reasonable trial strategy. However, trial counsel in this case does not attribute her failure to object to inadmissible hearsay evidence to any trial strategy, reasonable or otherwise. To the contrary, counsel testified at the evidentiary hearing that she did not recall any trial strategy relating to her failure to object to Wilt's hearsay testimony. Nor is any reasonable trial strategy not to object to Wilt's hearsay testimony, given the record in this case, apparent to this Court. Given the facts before us, we are persuaded that Riley has overcome the presumption that counsel's failure to object to Wilt's hearsay testimony was sound trial strategy. Reasonably competent counsel in trial counsel's position would have objected to Wilt's clear hearsay testimony. In this respect, trial counsel's failure to object "fell outside the wide range of professional competent assistance." Zink 278 S.W.3d at 176.

Nevertheless, in order to prevail on his ineffective assistance of counsel claim, Riley must satisfy both the performance prong *and* the prejudice prong of the Strickland test. Riley argues that he was prejudiced by trial counsel's inadequate performance because trial counsel's

13

failure to object to Wilt's hearsay testimony allowed the jury to consider testimony of a pitcher being thrown from the vehicle and liquid from the pitcher burning Goodwin's arm and face. Riley argues that had trial counsel objected to such testimony, the trial court would have sustained the objection. Without this prejudicial hearsay testimony, Riley submits there is a reasonable probability that the outcome of the case would have been different. While we agree that the trial court would have sustained an objection to the hearsay testimony, we reject Riley's argument that the admission of Wilt's hearsay testimony was outcome determinative of his trial.

Riley posits that the hearsay testimony at issue was extremely prejudicial and substantially contributed to his conviction. The hearsay at issue consisted of Wilt's testimony that a pitcher was thrown out of the car, that a liquid from the pitcher splashed onto Goodwin's windshield, and that the liquid smelled like ammonia and burned him. No other testimony was introduced at trial that the liquid in the pitcher burned Goodwin or that it smelled like ammonia. In fact, Wilt testified that he saw no injuries on Goodwin and that Goodwin sought no medical attention. However, there was substantial other evidence establishing the factual underpinnings of Riley's conviction. First, Borgmeyer also testified that he witnessed an object come over the top of Goodwin's vehicle, splatter a liquid, and fall to the highway. A broken pitcher was later recovered at that location. The State also produced evidence of the pseudoephedrine pills and the Mason jars, the relationship of these items to anhydrous ammonia in the production of methamphetamine, the strong smell of ammonia noted by Wilt, Borgmeyer's observation of an object hitting Goodwin's windshield and splashing, the film left on Goodwin's windshield, and the cloud of white smoke emanating from the cup.

In support of his assertion of prejudice, Riley argues that the State extensively emphasized Wilt's inadmissible hearsay testimony in its closing argument. Our review of the

14

record demonstrates just the opposite; reference to the hearsay testimony was sparing and limited. During the State's closing argument, the prosecutor only twice, briefly, mentioned that the liquid in the pitcher burned Goodwin. The vast majority of the State's closing argument focused on the non-hearsay testimony and evidence introduced by the State at trial.

We are persuaded that the strength of the State's case rested on the collective evidence against Riley, rather than on the minor details provided through Goodwin's out-of-court statements that the liquid in the pitcher burned him and smelled like ammonia. Overwhelming evidence that the liquid thrown from the car was anhydrous ammonia was presented at trial in addition to Wilt's hearsay testimony. Given the totality of the evidence of Riley's guilt, we cannot say that the motion court, after an evidentiary hearing, clearly erred in concluding that there was no reasonable probability that the outcome of the trial would have been different had trial counsel properly objected to the hearsay testimony. Although reasonably competent counsel in similar circumstances would have objected to the hearsay testimony, Riley was not prejudiced by trial counsel's failure to do so here. Point Two is denied.

## Conclusion

The judgment of the motion court is affirmed.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

15