STATE of Missouri, Respondent,

v.

Donald R. McCLINTOCK, Appellant.

Donald R. McCLINTOCK, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 18585, 20056.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 2, 1996.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Appellant, Donald R. McClintock, guilty of two felonies:

Count I: sodomy, § 566.060.3, RSMo Cum. Supp.1990, by having deviate sexual intercourse with B——, a boy younger than fourteen years of age;

Count II: sodomy, § 566.060.3, RSMo Cum.Supp.1990, by having deviate sexual intercourse with F——, a boy younger than fourteen years of age.

The jury assessed punishment at five years' imprisonment on each count. The trial court entered judgment per the verdicts, ordering the sentences to run consecutively. Appellant brings appeal 18585 from that judgment.

While that appeal was pending, Appellant filed a motion to vacate the judgment and

sentences per Rule 29.15.[1] The motion court denied relief after an evidentiary hearing. Appellant brings appeal 20056 from that order.

We consolidated the appeals, Rule 29.15(*l*), but address them separately in this opinion.

### Appeal 18585

The lone point relied on in this appeal avers the trial court erred in receiving Exhibit 4 in evidence. Exhibit 4 is a videotape of a ten-minute interview of B_____ by Dale Dortch,[2] a deputy juvenile officer.

The victims are brothers. At time of trial (December 14–15, 1992), B_____ was five years of age; F_____ was nine. The State's theory, as submitted in the verdict-directing instructions, was that between May 1, 1991, and December 3, 1991, Appellant touched each victim's penis with Appellant's hand.

Appellant does not challenge the sufficiency of the evidence to support the verdicts; consequently, we need not recount the sordid details. We write only that the evidence, viewed in the light most favorable to the verdicts, *State v. Schaal*, 806 S.W.2d 659, 661 (Mo. banc 1991), *cert. denied*, 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992), amply supports them.

Dortch's videotaped interview with B_____ occurred December 4, 1991. Only Dortch and B_____ were in the interview room. Over Appellant's objection, the trial court permitted the prosecutor to play the videotape (Exhibit 4) in the presence of the jury.

Appellant maintains Exhibit 4 should not have been received in evidence and played for the jury because Dortch "used direct, leading questions and positive reinforcement to lead [B_____] to make statements which conformed to [Dortch's] assumption that Appellant had sodomized [B_____] thereby rendering the taped interview unreliable under section 492.304.1(4)."

Section 492.304, RSMo Cum.Supp.1992, provides, in pertinent part:

"1. ... the visual and aural recording of a verbal or nonverbal statement of a child when under the age of twelve who is alleged to be a victim of an offense under the provisions of chapter ... 566 ... RSMo, is admissible into evidence if:

. . . .

(4) The statement was not made in response to questioning calculated to lead the child to make a particular statement or to act in a particular way;

. . . ."

In *State v. Moesch*, 738 S.W.2d 585 (Mo. App.E.D.1987), the accused challenged the admissibility of a videotape of an interview of a three-year-old victim of sodomy and sexual abuse. The accused maintained the videotape was inadmissible by reason of § 492.304.1(4), quoted above. The Eastern District of this Court held:

"[Section 492.304.1(4)] precludes leading questions which essentially put words in the child's mouth. We have viewed the tape in entirety and do not find it violates the statute. It may be conceded that the interviewer directed the child, a three year old with a relatively short attention span, to the areas of inquiry. But the child herself denominated the dolls used as representing herself, her brother and her father. She was asked what she and her father did. She demonstrated with the dolls what occurred. At no point in the tape did the interviewer suggest any conduct or phrase the question so as to suggest an answer. After identifying the conduct of her father the child was asked 'Does daddy do that one time or lots of times?' The child responded 'Lots of times.' She was then asked 'Does anybody else do that to you?' Answer 'No.' Q. 'Anybody?' A. 'Just Daddy.' These are not leading questions as they do not suggest an answer. The tape was properly admitted."

*Id.* at 587–88[4].

In *State v. Fraction*, 782 S.W.2d 764 (Mo. App.E.D.1989), the accused argued that a

---

1. Rule references are to Missouri Rules of Criminal Procedure (1995).

2. His surname appears as "Dortch" and "Dortsch" in the transcript. He engraved his surname on the videotape cassette as "Dortch." We assume that is the correct spelling.

videotape of an interview with two sodomy victims (ages seven and six) should have been rejected by the trial court because the interviewer violated § 492.304.1(4). Citing *Moesch*, the opinion in *Fraction* said:

"Essentially, the statute precludes leading questions that put words into the child's mouth. The interviewer may direct the child to areas of inquiry, but may not suggest any conduct or phrase a question so as to suggest an answer."

*Id.* at 767[5] (citation omitted).

■ Appellant presents four arguments in support of his point relied on, the first of which is wholly subjective. Appellant asserts: "Throughout the interview, Dorsch [sic] reinforces [B____'s] responses." That proclamation is a repetition of Appellant's argument in the trial court, where his lawyer said:

"Mr. Dortsch [sic] says okay and then moves on to the next subject, which I believe it reenforces [sic] an expected answer or reenforces [sic] the child's previous answer and signals the child, 'You're doing right, you're doing what we want, keep going.'"

We have carefully studied Exhibit 4 and have failed to discover anyplace where Dortch says or implies that B____ is "doing right" or "doing what we want." We likewise find no place where Dortch urges B____ to "keep going." Appellant's idea that Dortch, throughout the interview, reinforces B____'s responses may be Appellant's perception, but it is not ours.

■ Appellant's next argument against Exhibit 4 is that Dortch put words in B____'s mouth. The segment of the interview on which Appellant bases this claim must be examined in context.

B____ revealed to Dortch that Appellant had "done the same thing over and over." Specifically, B____ disclosed that Appellant, among other acts, touched B____'s penis. Dortch then asked B____ whether he was going to school "when this happened." B____ replied, "Yeah, part I wasn't, then I was."

Dortch responded, "So it started before you went to school, and it's happened since you've been in school this year?" B____ answered, "Yeah."

Appellant argues that B____ should have been allowed to independently explain his answer: "I wasn't, then I was."

In hindsight, that might have been preferable. However, we reject Appellant's notion that Dortch, by clarifying that Appellant's conduct occurred both before and after B____ started school, put words in B____'s mouth. B____ had already told Dortch that Appellant did the same thing "over and over." The period under investigation extended through the summer and fall of 1991. When B____ explained, "Yeah, part I wasn't, then I was," in response to Dortch's question about whether B____ was in school when Appellant engaged in the felonious conduct, it was reasonable for Dortch to conclude that the conduct began before B____ started school and continued thereafter.

Furthermore, B____'s answer concerned only the time of year when the conduct occurred, not the specifics of the conduct. As noted in *Fraction*, an interviewer may direct a child to areas of inquiry. 782 S.W.2d at 767[5]. Here, other evidence established that Appellant had been with B____ and F____, with no one else present, on multiple occasions during the period in question. In these circumstances, we hold the dialogue about which Appellant complains did not render Exhibit 4 inadmissible.

■ Appellant's next attack on Exhibit 4 concerns Dortch's use of two dolls during the interview. Dortch showed the dolls to B____ and asked who they were. B____ identified one as Appellant. Dortch then asked who the other doll would be. B____ answered, "Me."

Appellant asserts: "It was apparent that [B____] had been lead to make this identification. His voice sought reinforcement from Dorsch [sic] and he got it."

That may be Appellant's observation, but it is not ours. Appellant cites nothing in support of his premise that B____ "had been lead to make this identification." Nothing in the record suggests that Dortch rehearsed B____ before starting the videotape. Addi-

tionally, Appellant offers no clue as to how Dortch reinforced B____'s identification of the second doll. We espy none.

■ Appellant's final complaint about Exhibit 4 is that Dortch unfastened the velcro on the adult male doll's pants when he asked B____ whether Appellant had his clothes off. This attack, like the earlier ones, must be evaluated in context.

Dortch asked B____ how Appellant was dressed. Dortch inquired: "Can you show me how his clothes were ... did he have his clothes on like this?" Simultaneously with the inquiry, Dortch held up the doll that B____ had previously identified as Appellant.

At that juncture, B____ shook his head from side to side.

Dortch then asked, "How were they?"

B____ answered, "They was unbuttoned."

Dortch asked, "Can you show me you can unbutton them?" Simultaneously, Dortch moved his right hand to the front of the doll. Because the back of the doll is toward the camera, what Dortch did with his hand cannot be seen.

Dortch then asked B____ whether Appellant had his underwear up or down. B____ replied, "Down."

Dortch asked B____, "Can you show me how?" B____ thereupon reached toward the front of the doll, but what he did is obscured because the doll's back is toward the camera.

The description of those events in Appellant's brief omits some of the details set forth above. After carefully studying Exhibit 4 and taking all of the details into account, we find no merit in Appellant's averment that Dortch handled the dolls in a way that suggested B____'s responses.

We hold the trial court did not err in receiving Exhibit 4 in evidence and allowing the prosecutor to play it in the presence of the jury. Appellant's point relied on is denied, and the judgment is affirmed.

**Appeal 20056**

■ The sole point relied on in this appeal charges the motion court with error in failing *to determine whether the lawyer who repre*sented Appellant in that court ("motion counsel") provided Appellant "with effective assistance." Appellant asserts motion counsel rendered ineffective assistance in failing to call one Terry Stafford as a witness at the evidentiary hearing in the motion court.[3]

Appellant reminds us that in *Sanders v. State,* 807 S.W.2d 493 (Mo. banc 1991), and *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991), the lawyers representing the prisoners in post-conviction proceedings failed to file timely amended motions to vacate, and the Supreme Court of Missouri held the motion courts must determine the reasons for the lawyers' failure to do so. Endeavoring to extend the holdings in *Sanders* and *Luleff,* Appellant insists the motion court here was remiss in not ascertaining whether motion counsel's failure to produce Stafford as a witness constituted ineffective assistance.

In *Sanders* and *Luleff,* the dereliction of counsel was tantamount to abandonment. Here, motion counsel did not abandon Appellant. Motion counsel filed a timely amended motion for post-conviction relief on Appellant's behalf, requested an evidentiary hearing, and presented two witnesses at the hearing: Appellant and the lawyer who represented him at trial.

In *State v. Ervin,* 835 S.W.2d 905, 928–29 [47, 48] (Mo. banc 1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993), the Supreme Court of Missouri held:

"[The prisoner] alleges ineffective assistance of *post*-conviction counsel. These myriad claims of ineffectiveness, however, are not cognizable under Rule 29.15. *Pollard v. State,* 807 S.W.2d 498 (Mo. banc 1991), *cert. denied,* [502] U.S. [943], 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). Only where motion counsel has completely abandoned movant has this Court remanded to the motion court. *See Sanders,* 807 S.W.2d at 493. Abandonment is not inef-

---

3. There may be a valid explanation for motion counsel's failure to call Stafford. Appellant's pro se motion to vacate lists no witnesses. An amended motion filed by motion counsel lists, among other witnesses: "Terry Stafford, present address unknown." During his testimony in the motion court, Appellant mentioned Stafford but did not indicate where he could be found.

fective assistance. *Sanders* and *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991). Allegations of ineffective assistance of post-conviction counsel are categorically unreviewable. *Pollard,* 807 S.W.2d at 502.

*Ervin* is consistent with *Sloan v. State,* 779 S.W.2d 580, 583[6] (Mo. banc 1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990), which holds that a post-conviction proceeding cannot be used to challenge the effectiveness of counsel in the post-conviction proceeding.

Applying *Ervin* and *Sloan,* we hold the motion court had no duty to determine whether motion counsel rendered ineffective assistance in failing to present Stafford as a witness, and Appellant's claim that the motion court erred in failing to make such a determination is ineligible for appellate review.

The order of the motion court denying post-conviction relief is affirmed.

SHRUM, C.J., and PARRISH, J., concur.