STATE of Missouri, Plaintiff–Respondent,

v.

Dale CREWS, Defendant–Appellant.

No. 20161.

Missouri Court of Appeals, Southern District, Division One.

May 16, 1996.

Judith C. LaRose, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Joanne E. Joiner, Assistant Attorney General, Jefferson City, for respondent.

BARNEY, Judge.

Dale Crews (defendant) appeals his conviction, following a jury trial in the Circuit Court of New Madrid County, Missouri, of one count of assault in the first degree, § 565.050, RSMo 1986 and one count of armed criminal action, § 571.015, RSMo 1986. Pursuant to defendant's request to have the trial judge determine the punishment per § 557.036.2(1), RSMo 1986 he was sentenced to fifteen years and three years, respectively, the sentences to run consecutively.

The defendant raises two points of trial court error. In point one, he asserts that the court erred in refusing to add the word "death" in paragraph eight of Instruction No. 7 (patterned after MAI–CR 3d (306.08)) which authorizes the use of deadly force in the defense of another who is in imminent danger of death, serious physical injury or forcible rape. In his second point of error defendant asserts that the trial court plainly erred in allowing the prosecutor to make objectionable comments in his closing arguments when the prosecutor stated that defense counsel always claims defendants are victims and when the prosecutor remarked that defense counsel acted like a "magician" thereby impugning the character of defense counsel to the detriment of defendant.

Defendant does not challenge the sufficiency of the evidence to support the verdict, hence we recount only the evidence necessary to address the claims of error, viewing it in the light most favorable to the verdict. *State v. McClintock*, 913 S.W.2d 124, 125 (Mo.App.1996).

In the early morning of May 15, 1994, in Steele, Missouri, defendant and Jeff Cunningham (victim) were arguing in the center of a crowd of people in the middle of a street. They both had been drinking alcoholic beverages. The police dispersed the two, whereupon they went to the home of defendant's mother, Dorothy Bounds and shared a fifth of vodka. At some point, defendant's mother came into the living room. Shortly thereafter, defendant went into the kitchen to mix another drink. It was at that time that defendant's mother began to get off the recliner and fell down. She let out a cry for help. The victim ran over to help her to her feet as defendant re-entered the room. Defendant went to get a knife and returned with a 13¼ inch kitchen knife with a 9 inch blade and stabbed the victim in the left temple of his head. In an effort to defend himself the victim ran to the corner of the room and grabbed a potted tree. Defendant began swinging the knife at the victim and stabbed him in the upper arm. The evidence showed that the victim eventually sustained ten to twelve stab wounds to the throat, chest, arms and back. When the police arrived, the victim lay in a pool of blood, emitting a strong "bowel-type smell, like a puncture wound to the victim's intestines." Several of the wounds were referred to as "sucking chest wounds" due to the bubbles coming out of the wounds, indicating the wounds had penetrated the lungs. The police further testified that upon their arrival they found defendant standing over the victim, straddling his head. The defendant said, "I'll stomp your goddamn head." Upon the police asking defendant to step back, he replied: "No, I'll stop the son of a bitch. I'll kill him." The defendant further said: "Go ahead and save him; I'll kill him the next time."

The victim was in the hospital nine days, of which four were spent in intensive care. Because of the stab wound to his throat, his voice was raspy at the time of trial.

At trial the victim testified that he had not attacked anyone in any way and did not know why defendant had attacked him.

Defendant presented evidence in support of a theory of self-defense and defense of others. He testified that while he was out of the living room, going to the bathroom, the victim tried to get defendant's mother's purse containing pain pills which the victim allegedly had his eye on earlier. Upon attempting to grab the purse, the victim knocked defendant's mother down and she yelled for help. Defendant initially testified that he thought the victim was trying to rape his mother but then concluded that he simply was trying to get her pain pills. Defendant denied bringing a knife into the living room, but rather a knife was already in the living room, being used to cut some cheese and apples located on a table. Defendant further testified that the victim grabbed the knife but that he took the knife away from him and used it on the victim during a fierce struggle where he then testified that he became convinced the victim was going to either kill, rape or commit bodily harm on his mother, as well as do harm to the defendant. Defendant's mother testified that she did not see the initial stages of the altercation since she was face down on the floor and was having trouble getting up.

■ Defendant argues in his first point that the trial court erred when it refused to add the word "death" in paragraph eight of Instruction No. 7, as requested by defense counsel. The instruction was patterned on MAI–CR 3d (306.08) entitled, Justification: Use of force in defense of third persons. The instruction given by the trial court read as follows:

One of the issues as to Count I in this case is whether the use of force by the defendant against Jeff Cunningham was a defense of another person. In this state, the use of force including the use of deadly force to protect another person from harm is lawful in certain situations.

In order for a person to lawfully use force in defense of another person, such a defender must reasonably believe the person he is trying to protect is in imminent danger of harm from a third person. The person he is trying to protect need not be in actual danger but the defender must have a reasonable belief that the person is in such danger.

If the person trying to protect another person has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect the other person.

But a person acting in the defense of another person is not entitled to use deadly force, that is, force which he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes the person he is trying to protect is in imminent danger of death or serious physical injury or forcible rape.

And even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to protect the other person.

As used in this Instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of the defense of another person as to Count I in this case, you are instructed as follows:

If, under the circumstances that the defendant reasonably believed them to be, Dorothy Bounds was in imminent danger of harm from Jeff Cunningham and if the defendant reasonably believed Dorothy Bounds was in imminent danger of forcible rape or serious physical injury from the acts of Jeff Cunningham and he reasonably believed that the use of deadly force was necessary to defend Dorothy Bounds, then he acted in lawful defense of another person.

The State has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of another person. Unless you find beyond reasonable doubt that the defendant did not act in lawful defense of another person, you must find the defendant not guilty under Count I.

As used in this Instruction, the term "serious physical injury" means physical injury that creates a *substantial risk of* death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Defendant contends that paragraph eight of the Instruction should have read as follows:

If under the circumstances that the defendant reasonably believed them to be, Dorothy Bounds was in imminent danger of harm from Jeff Cunningham and if the defendant reasonably believed Dorothy Bounds was in imminent danger of *death or serious physical injury or forcible rape* from the acts of Jeff Cunningham and he reasonably believed that the use of deadly force was necessary to defend Dorothy Bounds, then he acted in lawful defense of another person. (Emphasis added.)

Defendant argues that the jury could have acquitted him based on the Instruction that he was protecting his mother from death when he assaulted Mr. Cunningham.[1]

Where an MAI–CR Instruction is not properly given, this Court must determine whether or not the defendant was prejudiced by any such omission. *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991); *State v. Green*, 812 S.W.2d 779, 787 (Mo.App.1991). "The giving or failure to give an instruction or verdict form in violation of this rule or any applicable Notes on Use shall constitute error, its prejudicial effect to be judicially determined." Rule 28.02(f) Missouri Rules of Criminal Procedure (1994). "Prejudicial error occurs whenever the jury may have been adversely influenced by an erroneous instruction." *State v. Levesque*, 871 S.W.2d 87, 90 (Mo.App.1994).

It is significant that contained within the last paragraph of Instruction No. 7 was the mandatory definition of "serious physical injury," which is repeated anew herein, to-wit:

**As used in this Instruction, the term 'serious physical injury' means physical injury that creates a *substantial risk of***

---

1. The trial court gave Instruction No. 8, the self-defense instruction, which contained the word

"death" in the appropriate paragraphs.

*death* **or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.** (Emphasis added.) [2]

With regard to the use of force in defense of persons § 563.031, RSMo Cum.Supp.1993 provides that:

1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person. . . .

2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless he reasonably believes that such deadly force is necessary to protect himself or another against *death, serious physical injury, rape,* sodomy or kidnaping or serious physical injury through robbery, burglary or arson. (Emphasis added.)

Instruction No. 7 instructed the jury that defendant properly used deadly force if he reasonably believed that his mother was in imminent danger of serious physical injury, i.e., physical injury that creates a substantial risk of death. Thus, in either event, whether defendant's mother was in danger of being killed or in danger of receiving serious physical injury, defendant was justified in using deadly force in her defense. Despite possible error, we find defendant was not prejudiced by submission of Instruction No. 7 to the jury, particularly in light of Instruction No. 8, the self-defense instruction, wherein the word "death" was appropriately placed.

■ In defendant's second point, he seeks plain error review of the trial court's *sua sponte* failure to reprimand the prosecutor and instruct the jury to disregard remarks made by the prosecutor during closing arguments. The defendant asseverates that by the prosecutor arguing that defense counsel portrayed his client as being a victim, specifically mentioning the Menendez brothers (a celebrated California trial) and accusing defense counsel of being "kind of like a magician" in his abilities to "lay down those red marks to get you [the jury] off the trail", he impugned defense counsel's integrity to the detriment of the defendant.

■ Plain error under Rule 30.20 may be considered on appeal even when not preserved for review "but only where there is a 'sound, substantial manifestation . . . that injustice or miscarriage of justice will result' if relief is not given." *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986). "Plain error review 'should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review'." *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995).

■ "Relief should rarely be granted on assertions of plain error as to closing argument because 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention'." *State v. Silvey,* 894 S.W.2d at 670; *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc 1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Furthermore, a failure to object may be part of the trial strategy wherein defense counsel may be setting the stage for built in error. *State v. Wood,* 719 S.W.2d at 760. "The trial court has broad discretion in controlling closing argument, and in determining what constitutes an impermissible inference. Improper argument is grounds for reversal only if it can be shown the prosecutor's comments had a decisive effect on the jury." *State v. Keil,* 794 S.W.2d 289, 293 (Mo.App.1990) (citations omitted); *State v. McGee,* 848 S.W.2d 512, 514 (Mo.App.1993). In Missouri, "we have not adopted a *per se* rule of mandatory reversal in all cases in which objectionable comments are made by a prosecutor." *State v. Roberts,* 838 S.W.2d 126, 131 (Mo.App. 1992). Appellate courts recognize that "[r]emarks are made in the heat of closing argument that, on reflection, would best be left unsaid." *State v. Hornbeck,* 702 S.W.2d 90, 93 (Mo.App.1985).

---

**2.** Section 565.002(6), RSMo.1986 defines "serious physical injury" as, "physical injury that creates a substantial risk of death. . . ."

In considering the instant case and the prosecutor's remarks that the defense counsel acted like a "magician" in distracting the jury from the facts and that the defense counsel portrayed his clients as "victims", we review these remarks against those found in *Hornbeck* and *State v. Greene*, 820 S.W.2d 345 (Mo.App.1991). In these latter cases there were reversals of convictions and remands for new trials on the basis of prosecutorial misconduct during closing arguments. In *Hornbeck*, the court reversed the conviction of a defendant where the trial court had allowed the prosecutor over objections to accuse defense counsel of conspiring to prevent a witness' testimony; in other words the prosecutor accused defense counsel of conspiring to commit a crime. In *Greene*, the prosecuting attorney strongly implied that the defense counsel was lying to the jury. Although the trial judge sustained defendant counsel's objections, the trial court refused to instruct the jury to disregard the prosecutor's statement. This Court said that "[s]tatements, without basis in the record, that defendant's counsel acted improperly, are error, as they degrade the defense." *Id.* at 347. *See also State v. Harris*, 662 S.W.2d 276 (Mo.App.1983).

■ The possible egregiousness of prosecutorial impropriety in the instant case does not rise to the level of the foregoing cases. In *State v. Ward*, 807 S.W.2d 225, 226 (Mo. App.1991) the prosecutor's comments that defense counsel was resorting to trickery were not improper because the comments were merely an attack on defense counsel's methods, rather than an attack on defense counsel's character and integrity. Further, in *State v. Petary*, 781 S.W.2d 534, 541 (Mo. banc 1989)[3] prosecutorial comments that defense counsel told the jury a "story" and that the jury would have to be a "magician" to believe defense counsel were considered proper because the comments merely suggested that the defense theory was not supported by the evidence and thus did not constitute an improper attack on the integrity of defense counsel. Hence in the instant case the prosecutor was attempting to show that defense counsel was seeking to distract the jury from the true issues in the case. Therefore, such comments about defense counsel's tactics or methods, as opposed to attacks on his character or integrity, do not rise to the level of impropriety warranting a reversal of conviction. Further, remarks by the prosecutor that the defense attorney always tries to make his clients out to be a victim were not out of line, considering the fact that the defendant was attempting to portray himself as an innocent victim in the fracas that occurred and in claiming the right of self-defense. As a general rule, a prosecutor is allowed to draw any inference deducible from the facts in evidence. *State v. Heinrich*, 492 S.W.2d 109, 114 (Mo.App. 1973). We rule that under the facts and circumstances of this case the comments of the prosecutor do not require a reversal. Accordingly, defendant's point is denied.

The judgment of the trial court is affirmed.

MONTGOMERY, P.J., and GARRISON, J., concurs.

---

**3.** In 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), this case was vacated and remanded on other grounds. It was subsequently affirmed in 790 S.W.2d 243 (Mo. banc 1990), *cert. denied*, 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990). The holdings for which we cite *Petary* remained intact in those decisions.