STATE of Missouri, Respondent,

v.

Billy R. WELLS, Appellant.

No. 23378.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 27, 2000.

Nancy A. McKerrow, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for Respondent.

BARNEY, Chief Judge.

Appellant, Billy R. Wells, was convicted, after a jury trial, of two counts of assault in the second degree. § 565.060, RSMo 1994. The trial court sentenced Appellant as a prior offender to two, seven year terms of imprisonment to run consecutively. In his appeal, Appellant raises two points of trial court error discussed below. We affirm.

■ Appellant does not challenge the sufficiency of the evidence supporting his conviction. "This Court accepts as true all evidence supporting the verdict, including all favorable inferences therefrom and disregards all contrary evidence and infer-

ences." *State v. Dunn,* 21 S.W.3d 77, 79 (Mo.App.2000).

On May 31, 1997, Arthur McGraw was operating a red Chevrolet Lumina. Larry Matjcek was a passenger in the car. They were traveling north on Highway 19 between Cuba and Steelville. Their vehicle had just come around a right curve, and as they started into a left curve, a gray, Dodge pick-up truck driven by Appellant appeared in front of them. According to Matjcek, Appellant's truck's left wheel was off the shoulder "on our side of the road" and gravel was spewing from the left wheel. The Lumina was then struck by the pick-up truck head on. Gary Callahan, a witness who was in his vehicle directly behind the Lumina, testified that the pick-up had hit the Lumina and had driven over the top of it.[1] Mr. Callahan further testified that after the collision he observed some cans of beer emerge from the window of the pick-up truck and saw Appellant crawl out, stagger, fall to his knees, and get back up again.

Chief Deputy Rick Walls was the first officer on the scene. He observed the pick-up truck overturned in the middle of the roadway and directly behind it was a maroon car in the ditch with two people trapped inside in "pretty bad shape." Appellant was standing by the truck with a can of beer in his hand which he had opened. Deputy Walls observed six or seven cans of beer lying in the roadway. Deputy Walls asked Appellant three times to put the beer can down but received no response. As Deputy Walls repeated the command, Appellant shook his head no and started to take a drink from the beer can, forcing Deputy Walls to knock the beer can from his hand. Appellant drew back as if to strike Walls. A scuffle ensued. It then took three men to handcuff Appellant once he was down on the ground. He was arrested.

1. Mr. Matjek suffered brain damage, a broken jaw, lost all of his teeth and suffered other injuries. Mr. McGraw testified at trial from a wheelchair. He had sustained injuries to his legs and abdomen. Both related that they suffered constant pain since the collision.

When Highway Patrolman Shawn Satterfield arrived at the site of the collision, he found a twelve pack box of Bud Light lying in the road and a total of seven beer cans, four opened and three unopened. From his investigation Patrolman Satterfield opined that Appellant had been driving in the wrong lane when the collision occurred. When Patrolman Satterfield interviewed Appellant in his jail cell, the patrolman related that he had noticed an odor of intoxicants on Appellant's breath. After reading Appellant his Miranda rights, according to Patrolman Satterfield, Appellant stated to him that he had drunk two beers and smoked marijuana earlier in the day. At no time did Appellant request medical attention. Later, while being driven to the hospital, Appellant admitted that he had drunk a beer right after the collision with the Lumina. Patrolman Satterfield testified:

> And then I asked him the next question which was, why would you do something like that? It was pretty obvious there were people that were injured and still in another vehicle. Then [Appellant] informed me that he had been informed by somebody else that if you're involved in an accident and you think that you're possible [sic] intoxicated, to drink an alcoholic beverage before the police arrives and therefore it would be impossible to determine what his alcohol level would be at the time of the accident.

In his first point of trial court error, Appellant contends that the trial court plainly erred when in voir dire the prosecutor was allowed to argue to the jury that the "evidence would show that [Appellant] had been using marijuana and alcohol and had swerved into the wrong lane . . . ." Appellant asserts that these remarks by the prosecutor predisposed the jury to convict him before it had heard any evidence. Appellant seeks plain error review of the trial court's failure to *sua sponte* intervene to prevent the prosecutor from making the foregoing remarks. *See*

Rule 30.20, Missouri Court Rules (2000). "The act complained of, to constitute plain error, must 'impact so substantially upon the rights of [a] defendant that manifest injustice or a miscarriage of justice will result.'" *State v. Tarkington,* 794 S.W.2d 297, 299 (Mo.App.1990)(quoting *State v. Driscoll,* 711 S.W.2d 512, 515 (Mo. banc 1986)).

Appellant complains of the following statement made by the prosecutor:

> This case is a criminal case as the judge indicated to you. On the 31st of May, 1997[,] in the early afternoon, two men named Larry Matjcek and Mark McGraw were driving an automobile on Highway 19 between Cuba and Steelville. Highway 19 is a primary road between Cuba and Steelville and the distance between the two is about 8 miles. In fact, Highway 19 continues on into Salem right through town here. They were driving from Steelville to Cuba going South in a Chevrolet Lumina. The defendant, at about the same time was driving north on Highway 19 in a pick-up truck. The defendant, the evidence will show, had been using alcohol and marijuana and swerved into the lane occupied by the two men in the Lumina and a crash occurred and those men were seriously injured. *Has anyone here heard anything about this incident or read anything in the paper or know anyone involved or just heard about it from friends? Anyone at all?* (emphasis added).[2]

"Control of the voir dire examination is vested in the discretion of the trial court and we will differ or interfere with this discretion only when the record shows a manifest abuse of discretion and a real probability of injury to the complaining party." *Id.; see State v. Antwine,* 743 S.W.2d 51, 58–59 (Mo. banc 1987). "A defendant has the right to an impartial jury—a jury which decides the case on the evidence presented at trial, not on infor-

---

2. In his brief, Appellant omits the italicized portion of prosecutor's argument.

mation gleaned from some external source." *Antwine*, 743 S.W.2d at 58; *see Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). "In order to protect this right, the Court and the parties must determine a prospective juror's personal knowledge of the crime or his exposure to pretrial publicity." *Antwine*, 743 S.W.2d at 58. Necessarily, "[r]evelation of some portion of the facts of a case on voir dire is necessary to make this determination. An insufficient description of the facts jeopardize (sic) appellant's right to an impartial jury." *Id.* "We do not permit counsel, however, to try the case on voir dire by a presentation of the facts in explicit detail." *Id.* "Nor is voir dire an appropriate occasion for argument." *Id.* Accordingly, "[a] balance must be struck implicating both due process concerns and the requirements of the individual case." *Antwine*, 743 S.W.2d at 58.

As previously set out, the "trial judge is in the best position to determine whether a disclosure of facts on voir dire is sufficient to assure the defendant of an impartial jury without, at the same time, being tantamount to a presentation of evidence." *Id.* at 58–59. Here, the State had a legitimate purpose in setting out specific facts of the case in order to determine whether anyone had prior knowledge of the case. "Voir dire requires 'the revelation of some portion of the facts of the case.'" *State v. Clark*, 981 S.W.2d 143, 147 (Mo. banc 1998)(quoting *State v. Leisure*, 749 S.W.2d 366, 373 (Mo. banc 1988)); *see Antwine*, 743 S.W.2d at 58. We find nothing argumentative or prejudicial about the context in which the State's recitation of facts was made. Accordingly, we determine that there has not been a showing by Appellant of a real probability of injury to him or a manifest abuse of discretion by the trial

court in not intervening on its motion to prevent the prosecutor from making his remarks. *See Tarkington*, 794 S.W.2d at 299. Point denied.

■ In his second point, Appellant contends that the trial court plainly erred in sustaining the State's objection to his counsel's arguing an adverse inference from the State's failure to introduce any evidence "concerning [Appellant's] blood alcohol content." Again, Appellant seeks plain error review under Rule 30.20. "'Plain error is one that is evident, obvious, and clear.'" *State v. Hopper*, 25 S.W.3d 691, 695 (Mo.App.2000)(quoting *State v. Knight*, 920 S.W.2d 612, 613 (Mo. App.1996)).[3]

■ The trial courts have broad discretion in the control of closing arguments. *State v. Barton*, 936 S.W.2d 781, 783 (Mo. banc 1996); *State v. Anderson*, 867 S.W.2d 571, 576 (Mo.App.1993). Unless it clearly appears the trial court abused its discretion, its rulings will not be disturbed on appeal. *See State v. Brown*, 939 S.W.2d 882, 883 (Mo. banc 1997). "[I]f reasonable [persons] can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.'" *State v. Brown*, 939 S.W.2d 882, 883–84 (Mo. banc 1997)(quoting *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448 (Mo. banc 1976)).

■ During Appellant's counsel's closing argument he stated, in pertinent part, that:

> Aside from the fact that we have a very horrible accident here, State's produced no physical evidence that [Appellant] was intoxicated. They took [Appellant] up to the Baptist Hospital. They had a lab tech come out and draw blood. Where is it?

**3.** The record shows that at the hospital a laboratory technician had drawn Appellant's blood for purposes of determining the amount of alcohol in his system. Prior to trial Appellant moved to suppress the results of the blood test and the State conceded that the blood alcohol test should not be introduced as

evidence because five hours had elapsed between the time of the collision and the time Appellant's blood was tested. Indeed, during trial, Patrolman Satterfield testified that a blood alcohol test should be given within ninety minutes after arrest of an individual suspected of driving while intoxicated.

The prosecuting attorney objected to Appellant's counsel's foregoing remarks on the basis that Appellant had previously filed a motion to suppress the very laboratory tests which Appellant "now ... wants to use against the state...." The trial court sustained the objection. However, the prosecuting attorney never moved to strike Appellant's counsel's remarks; nor did the prosecuting attorney object to the following pertinent remarks made thereafter to the jury by Appellant's counsel, to-wit:

> There is no physical evidence that [Appellant] was intoxicated at the time of this horrible accident.... Here, the conduct requires that [Appellant] was intoxicated at the time that this accident occurred.... But there's simply not evidence beyond a reasonable doubt that he was intoxicated at the time of that accident.

Accordingly, we fail to see how the trial court either abused its discretion or created prejudice to Appellant in sustaining the State's objection to Appellant's closing argument. Clearly Appellant placed before the jury his argument that the State had "no physical evidence" of Appellant's intoxication. Appellant was able to draw the adverse inference that the State had failed to introduce any physical evidence of Appellant's intoxication.[4] "On direct appeal we review the trial court 'for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial.'" *State v. Clayton*, 995 S.W.2d 468, 474 (Mo. banc 1999)(quoting *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998), *cert. denied*, 525 U.S. 896, 119 S.Ct. 222, 142 L.Ed.2d 182 (1998)). Appellant has not demonstrated that the action of the trial court was either erroneous or "'so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected.'" *State v. Smith*, 944 S.W.2d 901, 915 (Mo. banc 1997) (quoting *State v. Hornbuckle*, 769 S.W.2d 89, 92–93 (Mo. banc 1989)). Point denied.

The judgment is affirmed.

PREWITT, J. concurs.

CROW, J., concurs.

---

4. Recall, however, the testimonies of Deputy Walls, Highway Patrolman Satterfield and Gary Callahan, which are probative of Appellant's legal intoxication. *See State v. Teaster*, 962 S.W.2d 429, 431 (Mo.App.1998) (quoting *State v. Ruark*, 720 S.W.2d 453, 454 (Mo.App. 1986))(" '[T]he state is *not* required to produce results of chemical tests to prove intoxication.' ").